UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| MUNICIPIO AUTONOMO DE PONCE et al.,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al.,<br><br>    Defendant. | Civil No. 3:14-cv-01502 (JAF) |

**OPINION AND ORDER**

Plaintiffs,[1] including the Municipio Autónomo de Ponce ("Ponce"), sued Defendants,[2] including the United States Office of Management and Budget ("OMB"), the United States Department of Health and Human Services ("HHS"), and the United States Health Resources and Services Administration ("HRSA"), when their funding was discontinued under the Ryan White CARE (Comprehensive AIDS Resources Emergency) Act.[3] Plaintiffs alleged that the geographic boundaries for the Ponce Transitional Grant Area ("TGA")[4] were drawn in an arbitrary and capricious manner,

---

[1] Plaintiffs include the Municipio Autónomo de Ponce ("Ponce"), Centro Deambulantes Cristo Pobre, Inc., Hogar Crea Posada La Esperanza, Lucha Contra el SIDA, Inc., Iniciativa Comunitaria, Inc., Itcia Hernández Laboy, Jorge Ortiz Torres, and José Alvarez Medina. (Docket No. 1.)

[2] Defendants include the United States Office of Management and Budget ("OMB"); Brian Deese, Acting Director of OMB; United States Department of Health and Human Services ("HHS"); Sylvia Mathews Burnwell, Secretary of HHS; United States Health Resources and Services Administration ("HRSA"); and Mary K. Wakefield, Administrator of HRSA.

[3] The Ryan White legislation (Public Law 101-381) provides "emergency assistance to localities that are disproportionately affected by the Human Immunodeficiency Virus epidemic." 42 U.S.C. § 300ff.

[4] Part A of the Ryan White legislation provides funding to eligible metropolitan areas ("EMAs"). 42 U.S.C. § 300ff-11. If a metropolitan area does not have enough cases to qualify as an EMA, it can qualify as a "transitional area" (also known as a transitional grant area, or "TGA"). The Office of Management and Budget separately draws boundary lines called Metropolitan Statistical Areas ("MSAs") for statistical collection purposes. (Docket No. 42-2 at 18.) These MSAs were largely adopted as the boundaries for the Ryan White legislation. (Docket No. 42-2 at 18.)

leading to improper revocation of funding. (Docket No. 1.) Plaintiffs asked that we order HHS/HRSA to cease its use of the current Ponce boundaries, consider the correctly delineated boundaries, stay the closing of the Ponce TGA, and secure and grant the 2014 funds to the Ponce TGA. (Docket No. 1 at 5.) At a Show Cause Hearing, the parties consented to have the matter resolved on paper. (Docket No. 12.)

On August 12, 2014, we issued an opinion, order, and judgment. We found in favor of Plaintiffs, declaring that the Ponce TGA boundaries were unlawful as they now stand. We denied prospective funding relief for Fiscal Year 2014, however, finding that that issue was moot. (Docket Nos. 48, 49.)

On November 8, 2014, Defendants filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). (Docket No. 52.) Rule 59(e) states that the motion to alter or amend judgment must be filed within twenty-eight days of the entry of judgment. Fed. R. Civ. P. 59(e). Defendants met this timeline. (Docket No. 52.) In their motion, Defendants argue that we should have afforded deference to agency expertise because they were statutorily required to use MSA definitions. In the alternative, they argue that the boundaries were a reasonable exercise of HHS' discretion and were not arbitrary. Finally, Defendants argue that the statute of limitations under the Administrative Procedure Act ("APA") bars the suit. (Docket No. 52 at 2-3.) For the following reasons, we are not persuaded by Defendants' arguments.

# I.

# **Analysis**

### 1. **Statute of Limitations**

Defendants argue that any "challenge to HHS' use of the OMB's MSA delineation is time barred pursuant to the Administrative Procedure Act (APA)." (Docket No. 52 at 19.) Defendants cite to 28 U.S.C. § 2401, which provides that civil actions against the United States "shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401. It is true that the OMB MSAs have been used throughout the history of the Ryan White program; that Ponce was re-labelled a TGA when that category was created in 2006; and that Ponce was advised in 2009 that it was in danger of losing its funding grant after three years. (Docket No. 52 at 19.)

However, it is well established that a dispute must become ripe before it can be brought to a federal court, including disputes over administrative decisions. The

> basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967). We must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149. Because the second prong – the hardship of withholding consideration – has been covered in our previous opinion, we deal only with the first prong – fitness for judicial review. (*See* Docket No. 48 at 11-12.)

To be ripe, the regulations' impact on petitioners must be "sufficiently direct and immediate as to render the issue appropriate for judicial review." *Id.* at 152. This occurs "where the impact of the administrative action could be said to be felt immediately by those subject to it in conducting their day-to-day affairs….[and] in which primary conduct is affected." *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967). Agency action is fit for review once "the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990)(which lists the only major exception as "a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately"). The phrase "harms or threatens to harm" is fleshed out later in the opinion, which states that the challenged agency action must have an "actual or immediately threatened effect." *Id.* at 894.

In this case, Ponce continued to receive funding through the Ryan White legislation despite several legislative changes and ratifications. (*See* Docket No. 48.) In 2009, HHS informed Ponce that it might lose its funding after three more years, depending on future circumstances. However, a plaintiff must suffer from an "immediately threatened effect." *See Lujan*, 497 U.S. at 894. It was not until October 12, 2012, that HHS informed the mayor of Ponce that her area would not qualify for funding after Fiscal Year 2013. (Docket No. 27-3 at 1.) At that time, the Resident Commissioner of Puerto Rico and the mayor of Ponce took action. (Docket No. 48 at 6-7.) That was the first immediately threatened harmful action, and therefore it was on that

date that the right of action accrued.  Therefore, the statute of limitations began October 12, 2012 and runs until October 12, 2018, well beyond the time this lawsuit was filed.

**2. Use of OMB definitions**

Defendants argue that the "statute requires HHS to use OMB's definitions of a Metropolitan Statistical Area when determining eligibility for Ryan White HIV/AIDS Program assistance." (Docket No. 52 at 5.)  They also argue there were "mandates by Congress to use the OMB definitions." (Docket No. 52 at 5.)  We discussed this contention at length in our prior opinion, and found no evidence that HHS was required to use OMB's definitions.  (Docket No. 48 at 8-9.)  Further, we remind Defendants of their own argument that "[n]on-statistical programs, such as the Ryan White HIV/AIDS Program, are not legally obliged to utilize OMB's delineations and are not bound by said delineated statistical areas." (Docket No. 11 at 2.)

**3. Agency discretion**

Defendants argue that using MSA delineations to determine the metropolitan area boundaries is a "permissible construction of the statute, and thus, is a reasonable exercise of the agency's discretion in carrying out the statute." (Docket No. 52 at 15.)  Defendants state that we cannot substitute our view for that of the agency.  (Docket No. 52 at 17.)  However, we reiterate our early order.  The burden is on the agency to show "a rational exercise of deliberative decisionmaking," consideration of all pertinent facts in a detailed and reasoned manner, and the absence of unexplained discrimination.  (Docket No. 48 at 14-16) (quoting *Assoc. Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 111 (1st Cir. 1997)).  Defendants have repeatedly failed to do so.

### 4. <u>Peripheral Issues</u>

Defendants argue that our ruling "considered issues not presented by the parties by drawing comparisons between the way the OMB defines the metropolitan areas in New England states and the way metropolitan areas are defined in Puerto Rico." (Docket No. 52 at 17.) To determine whether Defendants drew boundaries in a way that was arbitrary and capricious, we needed to look at the definition of those boundaries. The official definition states that OMB MSAs were used for all areas except the New England states. (Docket No. 42-2 at 18.) That definition cannot be outside the scope of this case.

In their motion to reconsider, Defendants write that the New England states are "a long-standing exception […] and this exception is based on rational, historical differences [….] and one based on eminently reasonable grounds." As we have already stated, arbitrary and capricious review requires an explanation of otherwise unexplained discrimination. (Docket No. 48 at 16.) We find that Defendants have not provided any substantive explanation for this discrimination.

At the end of their motion, Defendants also ask for reconsideration because "[t]here is no evidence in the record of this case that the economic integration alleged by the Plaintiffs to exist in 2014, existed in 1993." (Docket No. 52 at 20.) As we stated in our previous order, there is likewise no evidence that it did not exist. (Docket No. 48 at 11). Stating that they failed to gather information does not help Defendants show that they made a reasoned decision after considering all factors.

**5. Standards**

Defendants argue that our holding "makes it impossible to apply an objective set of standards nationwide, forcing the Agency to issue case-by-case determinations of appropriate boundary areas for prospective grantees." (Docket No. 52 at 18.) Defendants write that the "Ponce MSA is defined in the same way as every other MSA." (Docket No. 52 at 18.) First, we have established that metropolitan areas in the New England states are not drawn in the same way as the Ponce MSA. (Docket No. 48 at 9.) Second, this does not adequately explain the rationale even for adopting OMB boundaries outside New England.

As discussed in our earlier opinion, Defendants do not explain how the Ponce region was decimated, effectively creating a non-explained, implausible situation where in Puerto Rico, San Juan is the only funded region. The island is several hours across by private car.[5] The HIV death rate is nearly four times higher than the U.S. national rate. (Docket No. 48 at 12.)[6] Defendants still appear to believe that they need not explain themselves. However, as we stated in our previous opinion, "this failure to make rational deliberative decisions regarding Puerto Rico is unjust and unacceptable in a democracy, and it has grave consequences for the 3.6 million residents of Puerto Rico." (Docket No. 48 at 17.)

---

[5] Search for "Puerto Rico" in Google Maps, http://maps.google.com (follow "Get Directions" hyperlink; then search "A" for "Fajardo" and search "B" for "Aguada" to view one route).

[6] ABC News recently reported that "the island has one of the highest HIV/AIDS infection rates in the U.S." Alexander Hotz & Kristopher Rios, *Puerto Rico has One of the Highest HIV/AIDS Rates in the U.S.*, ABCNEWS (Jul. 15, 2013), http://abcnews.go.com/ABC_Univision/News/isla-de-desencanto-puerto-ricos-public-health-crisis/story?id=19672575. We additionally point to HRSA's own data from 2011, stating that 18, 129 adults and adolescents in Puerto Rico have HIV/ AIDS, and that in 2011, 888 persons in Puerto Rico were first diagnosed with HIV infection. HEALTH RES. & SERVS. ADMIN., *2011 State Profiles: Ryan White HIV/AIDS Program*, http://hab.hrsa.gov/stateprofiles/HIV-AIDS-Epidemic.aspx#section1 (last visited Sep. 15, 2014).

## II.

## Conclusion

For the foregoing reasons, we **DENY** Defendant's motion for reconsideration (Docket No. 52).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 16th day of September, 2014.

S/José Antonio Fusté<br>
JOSE ANTONIO FUSTE<br>
U. S. DISTRICT JUDGE